UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAUL G.,[1]

                                                     Plaintiff,               Case # 21-CV-9-FPG

v.                                                                                     DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                    Defendant.
_____

## INTRODUCTION

Plaintiff Paul G. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3). *See also Smith v. Berryhill*, 139 S. Ct. 1765 (2019).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 16, 18. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In October 2014, Plaintiff applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 97, 112. He alleged disability since August 2014 due to a number of physical and mental impairments. Tr. 15, 97-98, 112-13. Plaintiff's applications were denied at the

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF Nos. 10, 11.

1

administrative level, but his case was remanded on appeal. *See Gipp v. Berryhill*, No. 18-CV-464, 2019 WL 4918049 (W.D.N.Y. Oct. 4, 2019). In June 2020, Administrative Law Judge Stephen Cordovani ("the ALJ") issued a decision finding that Plaintiff is not disabled, which constitutes the Commissioner's final decision. Tr. 755-58, 769-87; *Hatcher v. Saul*, No. 18-CV-2282, 2021 WL 1207315, at *4 (E.D.N.Y. Mar. 31, 2021). This action seeks review of that decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Hum. Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b).[3] If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her

---

[3] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 772. At step two, the ALJ found that Plaintiff had severe impairments of bipolar disorder, attention deficit and hyperactivity disorder ("ADHD"), personality disorder, degenerative disc disease of the spine, left knee degeneration, and obesity. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 773.

Next, the ALJ determined that Plaintiff had the RFC to perform a reduced range of medium work. Tr. 776-77. At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 784. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. Tr. 785-86. Accordingly, the ALJ found that Plaintiff is not disabled. Tr. 786-87.

### II. Analysis

Plaintiff argues that remand is warranted because the ALJ "failed to properly apply the treating physician rule" with respect to medical opinions issued by his treating psychiatrist, Jeffrey D. Kashin, M.D. ECF No. 16-1 at 25. The Court disagrees.

"[T]he treating physician rule[4] generally requires deference to the medical opinion of a claimant's treating physician[.]" *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal

---

[4] On January 18, 2017, the SSA revised the rules regarding the evaluation of opinion evidence for claims filed after March 27, 2017, and changed the way the Commissioner considers medical opinion evidence and prior administrative

and other citations omitted). Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citations omitted). When the ALJ does not afford controlling weight to the medical option of a treating physician, he must comprehensively consider several factors, the so-called "*Burgess* factors," and set forth the reasons for the weight assigned to the treating physician's opinion. *Halloran*, 362 F.3d at 32. An ALJ's "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted).

In this case, the Court concludes that the ALJ articulated good reasons for giving less than controlling weight to Dr. Kashin's opinions. Specifically, the ALJ reasonably concluded that Dr. Kashin's opinions were inconsistent with the record as a whole and were not supported by his own treatment records. *See* 20 C.F.R. § 404.1527(c)(3), (4); *Walter v. Saul*, No. 19-CV-522, 2020 WL 5269537, at *7 (W.D.N.Y. Sept. 4, 2020) ("It is well established that an ALJ may give the treating physician's opinion less weight when the opinion is internally inconsistent or inconsistent with other substantial evidence in the record."); *see also* Tr. 782-84.

Plaintiff has long suffered from mental impairments, including diagnoses of bipolar disorder, anxiety, depression, adjustment disorder, ADHD, and personality disorder. *See, e.g.*, Tr. 316, 345, 371, 394, 402. The record is mixed concerning the severity of his symptoms and the efficacy of treatment. In August 2014, Plaintiff visited the Erie County Medical Center due to

---

medical findings. *See* 20 C.F.R. § 404.1520c; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because Plaintiff's applications were filed before the enactment of the new rules, the Court will apply the rules that were in effect at the time of his applications.

5

suicidal thoughts. Tr. 351. He was referred for treatment at a different facility. Tr. 391. The treatment notes reflect that Plaintiff suffered from bipolar and depressive episodes. *Id.* Plaintiff explained that during these episodes, "his mood [is] seemingly out of his control in the context of racing thoughts, increased goal directed activity, etc." Tr. 392. Initially, Plaintiff exhibited poor insight, impaired impulse control, and hyperactivity, Tr. 394, but he expressed approval of his treatment regimen by the end of his stay. Tr. 401. Plaintiff had good insight, fair judgment, intact memory, good concentration, and stable mood at a November 2014 appointment. Tr. 448, 450.

By April 2015, Plaintiff was receiving counseling twice per month and medication management once per month. Tr. 471. Consultative examiner Janine Ippolito, Psy.D., identified only mild and moderate limitations in Plaintiff's functional abilities, though she also noted that Plaintiff's "psychiatric and substance abuse problems" may "significantly interfere with [his] ability to function on a daily basis at times." Tr. 475. Similarly, a state agency consultant—M. Marks—opined that Plaintiff was no more than moderately limited in his functioning. Tr. 121-23. Medical records in 2015 and early 2016 show normal mood and stable psychological symptoms. Tr. 498, 502, 535, 541, 545, 559, 563, 583, 598, 600, 602, 609, 611, 617, 623. In April 2016, Plaintiff began mental health treatment at Spectrum Human Services. Tr. 644. He reported no severe symptoms, and only moderate symptoms of anxiety, depression, irritability, and difficulty concentrating. Tr. 651. In June 2016, Dr. Kashin opined that Plaintiff was very limited in his abilities to understand instructions, maintain concentration, make simple decisions, and function in a work setting at a consistent pace. Tr. 749.

Plaintiff's examinations did not show abnormal results for the remainder of 2016. Tr. 565, 649-50, 737. In February 2017, Plaintiff reported more anxiety but an otherwise stable mood. Tr. 1256. In March 2017, Dr. Kashin issued another medical opinion, in which he wrote that Plaintiff

"report[ed] racing thoughts and difficulty concentrating due to anxiety," along with feelings of depression.  Tr. 750.  Dr. Kashin indicated that, due to his bipolar disorder, Plaintiff had episodes of mania and depression.  Tr. 751.  Dr. Kashin opined that Plaintiff could not complete a normal workday without interruptions from psychologically based symptoms, was seriously limited in his ability to deal with normal work stress, and would be absent more than four days per month.  Tr. 753-54.

On April 3, 2017, the ALJ held a hearing on Plaintiff's benefits application.  Tr. 38.  Plaintiff testified that he cannot maintain the concentration needed to work.  Tr. 52, 64.  He also has comprehension issues, which would cause anxiety in the work setting.  Tr. 52.  Plaintiff stated that his anxiety medication was not effective in curbing his anxiety when he was "put under pressure."  Tr. 59.  Plaintiff suffered from anxiety and panic attacks when he was in "larger groups of people" or became frustrated.  Tr. 61.  Plaintiff testified that his other medications "seem[ed] to be okay," however.  Tr. 62.  Plaintiff was living in his own apartment.  Tr. 44.  He reported scheduling his own medical appointments and errands, Tr. 48-49, and denied engaging in many social activities.  Tr. 70.

In May 2017, Plaintiff reported attending all his appointments and taking his medication as prescribed, and he denied mood swings and stated he was "doing okay."  Tr. 1326.  In August 2017, Plaintiff denied depression and mood swings.  Tr. 1328.  In November 2017, Plaintiff reported a stable mood, though he believed he was "somewhat over-medicated" and was falling asleep "too easily."  Tr. 1330.  Plaintiff was complying with his treatment regimen.  Tr. 1331.

In February 2018, Plaintiff reported suffering from "a lot of depression lately."  Tr. 1332.  One month later, however, Plaintiff reported that things were "going well," and he denied depression, mood swings, or sleep problems.  Tr. 1334.  In June 2018, Plaintiff's counseling

appointments at Spectrum Human Services were moved from biweekly to monthly due to Plaintiff's "consistent" mental health. Tr. 1377. Plaintiff reported "doing well" besides "trouble sleeping." Tr. 1381. Also in June 2018, Plaintiff had a consultative examination with Christine Ransom, Ph.D. Tr. 1342. Plaintiff reported that his symptoms were "for the most part" stabilized. *Id.* Plaintiff stated that he occasionally had anxiety and depression, but that his medications were working well. *Id.* Plaintiff denied "clinical level" depression, anxiety, or manic symptomology. Tr. 1342-43. Plaintiff showed intact concentration, neutral mood, fluent speech, coherent thought process, and intact memory. Tr. 1343-44. Plaintiff reported visiting family and friends frequently, socializing, managing his own money, and managing his own daily needs. Dr. Ransom identified only mild functional limitations and believed that Plaintiff's "very mild and episodic" conditions would not "significantly interfere" with his ability to function on a daily basis. Tr. 1344. In July 2018, state agency consultant T. Bruni concluded that Plaintiff's psychiatric impairments were non-severe and caused only mild functional limitations. Tr. 918-19, 1353. At a mental-health appointment, Plaintiff reported feeling "content with life." Tr. 1383. In Fall 2018, Plaintiff reported stabilized symptoms of depression and anxiety. Tr. 1396; *see also* Tr. 1400 (reporting that depression "has improved over the past several years"); Tr. 1404, 1407.

In early 2019, Plaintiff reported worsening depression and suicidal ideation (without plan). Tr. 1415, 1421, 1424, 1428. By the end of February 2019, Plaintiff reported a better mood and outlook, however. Tr. 1432, 1436. In March 2019, Plaintiff reported no depression or mood swings, though he complained that he was "stressed out" for financial and interpersonal reasons. Tr. 1472. The same month, Dr. Kashin issued another medical opinion, which differed in some respects from his prior opinions. Tr. 1372. Dr. Kashin opined that Plaintiff was more functionally limited than in March 2017, insofar as he was now seriously limited in his ability to understand

and carry out very short and simple instructions; could not maintain attention for two-hour segments; and could not perform at a consistent pace without an unreasonable number of rest periods. Tr. 1374. But he also opined that Plaintiff was less functionally limited than in March 2017 with respect to, among other things, dealing with stress in semiskilled and skilled work, maintaining socially appropriate behavior, and interacting with the general public. Tr. 1374-75. Dr. Kashin also estimated that Plaintiff would now miss only two—rather than four—days per month. Tr. 754, 1376.

In June 2019, Plaintiff reported "sky high" anxiety due to an eviction. Tr. 1469. In July 2019, Dr. Kashin observed that Plaintiff had "returned to baseline." Tr. 1466. Plaintiff was feeling "a lot better" and his anxiety had "decreased significantly." *Id.* In July 2019, Dr. Kashin issued another medical opinion. Tr. 1460. In August 2019, Plaintiff again reported an improvement in his anxiety since his stressors were alleviated and his medications were changed. Tr. 1516. Plaintiff moved back to biweekly appointments, however. Tr. 1520. In October 2019, Plaintiff reported "doing well," with only occasional bad days. Tr. 1563. He found improvement with his new medication. *Id.* Plaintiff had lost 35 pounds through diet and exercise and was now participating in a mood disorder group. *Id.* Plaintiff reported suicidal ideation in December 2019. Tr. 1751.

In 2020, Plaintiff's symptoms fluctuated. *See* Tr. 1737. He reported high depression and anxiety in January, but those symptoms waned in February. Tr. 1592, 1598. In February 2020, Plaintiff reported low depression and anxiety. Tr. 1592. In April 2020, Plaintiff indicated that his depression "fluctuate[d]" with his anxiety. Tr. 1587. At the time, his anxiety was "7 out of 10" due to his tense living situation. Tr. 1587. The COVID-19 pandemic negatively affected his mental health. Tr. 1772.

In June 2020, Plaintiff attended a hearing held by the ALJ. Tr. 797. He testified that he saw Dr. Kashin once every three months, met with a therapist biweekly, worked with a clinical care worker twice per month, met with a peer biweekly, attended a behavioral therapy group every Tuesday, and attended a mood-disorder group every Friday. Tr. 807. The clinical care worker helped Plaintiff with managing "everyday" needs, like transportation, appointments, and medication. Tr. 808. Plaintiff testified that his medications kept him stable "[f]or the most part," except that he intermittently suffered from more severe depression and anxiety. Tr. 810. These episodes could last for days or weeks. Tr. 811. During an episode, Plaintiff would have to be "coaxed" into taking care of his personal hygiene. Tr. 817. Plaintiff denied doing any household chores, socializing with friends or family, or pursuing any hobbies. Tr. 811, 815. He acknowledged that he did some cooking for the household. Tr. 819.

In August 2020, Dr. Kashin issued a final medical opinion, in which he opined that Plaintiff had no "useful ability" to either complete a normal workday or deal with normal work stress. Tr. 764.

In his decision, the ALJ gave "some weight" to Dr. Kashin's opinions. Tr. 782-84. He found that Dr. Kashin's opinion were not "consistently supported by either his own findings or by the other evidence of record." Tr. 784. Because these grounds are supported by sufficient evidence, they constitute good reasons for giving less weight to Dr. Kashin's opinions. *See* 20 C.F.R. § 404.1527(c)(3), (4).

The ALJ could reasonably conclude that Dr. Kashin's opinions were inconsistent with the record as a whole. *See id.* § 404.1527(c)(4). In reaching this conclusion, the Court notes that an ALJ's decision need not be fully explicit in every detail so long as the Court can "glean the ALJ's rationale from the record." *Dyana G. v. Comm'r of Soc. Sec.*, No. 19-CV-805, 2021 WL 465249,

at *3 (W.D.N.Y. Feb. 9, 2021); *see also Michael R. v. Comm'r of Soc. Sec.*, No. 19-CV-6836, 2021 WL 346365, at *7 (W.D.N.Y. Feb. 1, 2021). As the above-discussed records show, Plaintiff's treatment records routinely showed normal mood and stable psychological symptoms. Tr. 498, 502, 535, 541, 545, 559, 563, 583, 598, 600, 602, 609, 611, 617, 623, 1253, 1326, 1334. Plaintiff often reported that his medications had stabilized his symptoms, and he downplayed the severity of his bipolar, anxiety, and depression disorders. *See, e.g.*, Tr. 810, 1334, 1342-43, 1396, 1400; *see also* Tr. 1342-43 (denying "ongoing clinical level depression, generalized anxiety, panic attacks, manic symptomology, thought disorder, [or] cognitive symptoms"). To be sure, Plaintiff intermittently reported episodes of mania, depression, and anxiety, but they often resolved within a few appointments and with a change in medication. *See, e.g.*, Tr. 1332, 1334, 1415, 1421, 1432, 1469, 1516, 1563. There is evidence that Plaintiff displayed cognitive skills, managed his needs, and engaged in activities inconsistent with the limitations that Dr. Kashin identified. *See* Tr. 1343-44 (in June 2018, finding that Plaintiff had intact concentration and noting Plaintiff's reports that he "frequently" visited family and friends, enjoyed reading, managed his own money and personal needs, and completed chores around the house); Tr. 1513 (recounting Plaintiff's compliance with medications and psychiatric appointments); Tr. 1563 (in October 2019, reporting loss of 35 pounds "in a few months through diet and exercise"). Two consultative examiners and two state agency consultants proffered opinions consistent with a more favorable view of Plaintiff's abilities.[5] *See* Tr. 122-23, 475, 919-20, 1344.

---

[5] One of the examiners, Dr. Ransom, opined that Plaintiff's bipolar disorder, depression, and anxiety were "very mild and episodic." Tr. 1344-45. Plaintiff interprets this statement to mean that "Plaintiff would not be able to function" during these episodes, which "could very well impact the ability to sustain substantial gainful activity." ECF No. 16-1 at 30. Read in context, however, it is clear that Dr. Ransom intended to convey that, when they occurred, Plaintiff's episodes of depression, mania, and anxiety would be "very mild." Tr. 1345; *see also* Tr. 1344 (stating that Plaintiff would only suffer from "mild episodic difficult[ies]" in certain areas); Tr. 1345 (suggesting that there was "no impairment" and diagnosing Plaintiff's conditions as "currently very mild and episodic").

11

Plaintiff contends that the ALJ improperly "generaliz[ed] periods of stabilization" despite the fact that "[c]ycles of improvement and debilitating symptoms of mental illness are a common occurrence." ECF No. 16-1 at 29 (internal brackets omitted). While it is true that an ALJ may not "pick out a few isolated instances of improvement over a period of months or years and [] treat them as a basis for concluding the claimant is capable of working," *Gipp*, 2019 WL 4918049, at *5, the Court does not interpret the ALJ's decision in that manner. Rather, there was a factual conflict in the record—the severity and frequency of Plaintiff's mental-health episodes—and the Court reads the decision to have resolved that conflict against Plaintiff, as the ALJ was entitled to do. *Lynette W. v. Comm'r of Soc. Sec.*, No. 19-CV-1168, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021).

Based on the above evidence, the ALJ could reasonably conclude that Plaintiff's functional abilities were generally greater than those identified by Dr. Kashin, and that any intermittent episodes of more severe symptoms could be managed through treatment and medications. Although Plaintiff would draw a different inference from the record—*i.e.*, that Plaintiff's symptoms fluctuated in "cycles of improvement and debilitating symptoms," ECF No. 16-1 at 29—the mere fact that Plaintiff can find evidentiary support for his position does not entitle him to relief. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (noting that an ALJ's findings "must be given conclusive effect" where reasonably supported by the record, even if "the administrative record may also adequately support contrary findings on particular issues").

---

Plaintiff also suggests that Dr. Ippolito's opinion is inconsistent with the ALJ's decision, insofar as she opined that Plaintiff's "psychiatric and substance abuse problems" may "significantly interfere with [Plaintiff's] ability to function on a daily basis *at times*." Tr. 475 (emphasis added); *see also* ECF No. 16-1 at 30-31. The Court disagrees. Dr. Ippolito's view that Plaintiff might have episodes that "at times" could undermine his functional abilities is not inconsistent with the ALJ's position that over the years, Plaintiff's mental health and episodic symptoms have improved and stabilized through treatment and medication. *See* Tr. 780, 783.

The Court likewise concludes that the ALJ reasonably rejected Dr. Kashin's opinion because they lacked support. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). As the ALJ observed, Dr. Kashin's later opinions are "internally inconsistent." Tr. 783. Dr. Kashin identifies serious functional limitations, but, as support for those limitations, he cites clinical findings of: "Alert and oriented x3. Affect is appropriate and mood is euthymic." Tr. 1372, 1456. More generally, the ALJ could reasonably conclude that Dr. Kashin's notes did not correlate with his opinions. *See* Tr. 649-50 (in June 2016, noting that Plaintiff denied depression, mood swings, and lethality, and was "currently stabilized" on medication, with euthymic mood, coherent speech, and intact cognitive functions); Tr. 1326 (in May 2017, noting that Plaintiff was "doing well," with no mood swings or lethality); Tr. 1332-34 (in February and March 2018, stating that Plaintiff suffered from depressive episode that resolved by next month after medication change); Tr. 1381 (in June 2018, noting that Plaintiff was "doing well" and denied depression, mood swings, and lethality); Tr. 1404 (in October 2018, noting that things were "going well" for Plaintiff and that he was in "good contact and control," with coherent speech, appropriate affect, and euthymic mood); Tr. 1584 (in October 2019, reporting that "[e]verything is going well" for Plaintiff, who denied depression, mania, mood swings, and lethality). Again, even if Plaintiff can point to other evidence that conflicts with the ALJ's conclusion on this issue, "[t]he mere fact that evidence exists to support Plaintiff's position is not enough to justify relief." *Emery S. v. Comm'r of Soc. Sec.*, No. 20-CV-662, 2021 WL 2592363, at *4 (W.D.N.Y. June 24, 2021).

n/a

Accordingly, because the ALJ could reasonably conclude that Dr. Kashin's opinions were inconsistent with the record as a whole and unsupported, he was permitted to accord those opinions less weight.[6] The ALJ did not violate the treating physician rule, and remand is not warranted.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 18) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 16) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 24, 2023
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

---

[6] Plaintiff also challenges the ALJ's other reasons for discounting Dr. Kashin's opinions. *See generally* ECF Nos. 16-1, 19. The Court need not address those other grounds, as they constitute, if anything, harmless error. *See Samantha T. v. Comm'r of Soc. Sec.*, No. 20-CV-201, 2021 WL 3566597, at *2 (W.D.N.Y. Aug. 12, 2021).